UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHANNIE FELSENTHAL, individually
and on behalf of all others similarly
situated,

          Plaintiff,

    v.

MEDELA LLC,

          Defendant.

No. 24 CV 5671

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Stephannie Felsenthal brings this putative class action against Medela LLC alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, other States' consumer fraud acts,[1] and unjust enrichment. Medela moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). R. 23. For the following reasons, the motion is granted in part and denied in part.

## Background

The following facts are taken from the first amended complaint and assumed to be true for the purposes of this motion. Medela manufactures and distributes baby feeding bottles (the "Baby Bottles") and labels them as "Made Without BPA" and "Dishwasher and Microwave Safe." R. 22 ¶ 1. Relying on these descriptors, Felsenthal purchased the Baby Bottles in 2022. *Id.* ¶¶ 7, 12. Felsenthal alleges that reasonable

---

[1] Those states include California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. R. 22 ¶ 101.

1

consumers reading these descriptors together would believe the Baby Bottles can be used in a microwave or be exposed to heat without the danger of exposure to harmful microplastics. *Id.* ¶¶ 13, 60, 62. The Baby Bottles are made with polypropylene, which, when heated, releases large amounts of microplastics. *Id.* ¶¶ 32–33. Felsenthal brings this lawsuit alleging Medela misled her and other consumers, asserting class claims for violations of various State consumer fraud laws (Count I), the ICFA (Count II), and unjust enrichment (Count III). Medela moves to dismiss the complaint under Rules 12(b)(5) and 12(b)(6).

## Discussion[2]

### I. Service of Process

First, Medela argues that because the summons does not bear the Clerk of the Court's signature or the Court's seal, the complaint must be dismissed. A defendant may move to dismiss a complaint under Rule 12(b)(5) based on insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5); *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011). "[V]alid service of process" consistent with Federal Rule of Civil Procedure 4 "is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). Rule 4(a) requires a summons to, among other things, "be signed by the clerk" and "bear

---

[2] Medela asks the Court to take judicial notice of documents produced by the U.S. Food and Drug Administration ("FDA") that suggest that microplastics are not harmful to humans. R. 25. Felsenthal does not oppose this request. Accordingly, the Court takes judicial notice of these documents without converting this motion to dismiss into a motion for summary judgment. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

the court's seal." Fed. R. Civ. P. 4(a)(1). But failure to comply with these formalities does not warrant automatic dismissal of the complaint. Indeed, the court may permit a summons to be amended, Fed. R. Civ. P. 4(a)(2), and courts have found that dismissing a complaint simply to amend the summons "would [unnecessarily] delay the cause of action." *Richard v. Sun Elec. Corp.*, No. 89 C 20152, 1990 WL 39801, at *2 (N.D. Ill. Mar. 15, 1990). Here, while the summons was unsigned by the Clerk and did not contain the Court's seal, it was issued on August 16, 2024 and returned executed. R. 3. Medela had notice of Felsenthal's suit and responded accordingly. *Tenan v. Strategiq Commerce, LLC*, No. 15-cv-5170, 2015 WL 7077330, at *2 (N.D. Ill. Nov. 12, 2015). Thus, Medela's motion to dismiss for lack of proper service is denied.

## II.     Failure to State a Claim

Next, Medela moves to dismiss the complaint for failure to state a claim. A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, the complaint must provide the defendant with "fair notice" of the claim and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Facial plausibility exists when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (citations omitted). In deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

In addition, a party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). But the Seventh Circuit has "warned that courts and litigants often erroneously take an overly rigid view of the formulation" and that "[t]he precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). At bottom, to satisfy the Rule 9(b) particularity standard, "[i]t is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Rolls-Royce*, 570 F.3d at 854–55 (citations omitted).

Medela's Rule 12(b)(6) motion contends that Felsenthal has not sufficiently pleaded pursuant to Rule 9(b)'s standard and has not plausibly alleged a claim upon which relief can be granted under any of the stated counts.

4

### A.     Rule 9(b)

First, Medela contends that all of Felsenthal's claims are subject to Rule 9(b) because they "sound in fraud." R. 24 at 17. Medela argues that Felsenthal has not satisfied Rule 9(b) and that all the counts should be dismissed for this reason. The ICFA recognizes a distinction between deceptive conduct and unfair practices, with each "hav[ing] different pleading standards"—deceptive conduct being subject to Rule 9(b) and unfair practices being subject to Rule 8. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). However, when, as here, some portion of "the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.*; *see also Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (explaining that claims "premised upon a course of fraudulent conduct" implicate Rule 9(b)). Because all of Felsenthal's claims sound in fraud, they are analyzed under the heightened pleading standard set forth in Rule 9(b).

Medela's argument that Felsenthal's claims do not satisfy Rule 9(b) is one, conclusory sentence: "Because Plaintiff's claims do not satisfy Rule 9(b)'s standard, they must be dismissed." R. 24 at 17. This is not enough. Even so, Felsenthal has sufficiently alleged the who (Medela); what (representations and material omissions); when (at the point of purchase); where (on the packaging); and how (representations and material omissions caused consumers to purchase the products at a premium). This is sufficient to satisfy Rule 9(b), and the Court denies Medela's motion to dismiss the counts on this basis.

5

### B.     ICFA Claim

Medela then argues that Felsenthal has not plausibly alleged an ICFA claim. The ICFA prohibits the use of "unfair or deceptive acts or practices." 815 ILCS 505/2. "To plead a deceptive practices claim under the ICFA, a private plaintiff must allege: (1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart, Inc.*, 107 F.4th 585, 598 (7th Cir. 2024) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002)).

Medela contends that Felsenthal does not adequately plead a deceptive practice because she has not alleged facts that suggest: (1) that the "Made Without BPA" and "Dishwasher and Microwave Safe" representations, or that the omission about microplastics, mislead a reasonable consumer; (2) intent; and (3) actual damages. The Court addresses these in turn.

#### 1.     Reasonable Consumer

"Where, as here, the alleged deceptive practice involves misleading labels, the ICFA requires plaintiff to allege plausibly that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Kahn*, 107 F.4th at 598 (internal citations and quotations omitted). To maintain an ICFA claim based on omissions, the omission must be on a communication from the defendant and it must have actually deceived

6

the plaintiff. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719–20 (N.D. Ill. 2020) (citing *De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009)). What matters is how reasonable consumers "understand and react to the advertising," which is often a question of fact. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476, 479 (7th Cir. 2020). The advertisement must also be read in context. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018) ("An allegedly deceptive act must be viewed in light of all the information available to plaintiffs." (cleaned up)). However, a court may dismiss an ICFA claim if the deceptive statement is not misleading as a matter of law— meaning the plaintiff's interpretation of the labels or advertising is "unreasonable and fanciful," and thus implausible on its face. *Bell*, 982 F.3d at 477.

Felsenthal's complaint and arguments distill down to this: the "Made Without BPA" and "Dishwasher and Microwave Safe" representations mislead reasonable consumers to believe the Baby Bottles do not release unsafe levels of microplastics when they are heated. This interpretation of the representations is both unreasonable and implausible. To begin, these statements are true; Felsenthal does not contend that the Baby Bottles are made with BPA or that they are unsafe to put in a dishwasher or microwave. While "a statement that is literally true can still be misleading," *Daly v. FitLife Brands, Inc.*, No. 22-CV-00762, 2023 WL 6388112, at *7 (N.D. Ill. Sept. 28, 2023), no reasonable consumer would understand these representations to guarantee the Baby Bottles do not contain harmful levels of microplastics when heated. *Cf. Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) (explaining that no reasonable consumers

7

would understand "vanilla bean flavor" representation to guarantee the flavor came from vanilla beans and not from artificial flavors). Instead, a reasonable consumer would plausibly read these representations to understand what the Baby Bottles are made without and how they will withstand melting in or causing damage to a dishwasher or microwave.

It is also implausible for any reasonable consumer to believe that plastic products are free of all microplastics. According to Felsenthal's own complaint, it is well-known that microplastics "form when solid plastics break down through abrasion, degradation, or chemical processes such as exposure to heat." *See* R. 22 ¶¶ 23, 32 n.17. Because the Baby Bottles are plastic, the allegation that microplastics form from the breakdown of all solid plastics undercuts Felsenthal's contention that reasonable consumers would read Medela's representations to mean the Baby Bottles are free from microplastics, even when heated. *See DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 699, 703 (N.D. Ill. 2023) (rejecting allegations that "[r]easonable consumers expect fudge to be made from dairy ingredients" where "[p]laintiff's own complaint asserts that fudge can contain vegetable oils").

To the extent Felsenthal contends that the representations mislead reasonable consumers to believe the Baby Bottle are safe, when heating polypropylene causes harmful levels of microplastics, Felsenthal provides no allegations to plausibly suggest that microplastics are harmful at any level of consumption. Although Felsenthal cites to many scientific studies, none definitively link exposure to microplastics to adverse health consequences, nor do they establish a threshold level

8

of unsafe microplastics exposure. *E.g.*, R. 22 ¶ 23 n.4 (study concluding that microplastics *may* exacerbate cardiovascular issues); ¶ 27 (exposing a child to "low doses" of microplastics early in development *may* cause long-term health complications). Indeed, the FDA has stated that "[c]urrent scientific evidence does not demonstrate that the levels of microplastics or nanoplastics detected in foods pose a risk to human health." R. 24-2 at 2. Thus, Felsenthal's studies are not enough to nudge from possible to plausible that exposure to microplastics is unsafe.

Felsenthal further argues that the omission of a microplastics warning, especially on baby products, is also actionable. *See Raya v. Mead Johnson Nutrition Co.*, 758 F. Supp. 3d 819, 832 (N.D. Ill. 2024) (finding plaintiff had adequately stated an omission claim where Mead Johnson made statements about healthy ingredients on its packaging but omitted the presence of heavy metals); *Miller v. Philips N. Am. LLC*, No. 24-cv-03781-RFL, 2025 WL 582160, at *2–3 (N.D. Cal. Feb. 20, 2025) (holding that the plaintiffs stated an omission claim where they had sufficiently alleged a plausible connection between the amount of microplastics leached by the products at issue and the associated harms to infants). First, the "Made Without BPA" and "Dishwasher and Microwave Safe" communicate nothing about microplastics. Second, Felsenthal cites to surveys where consumers say it is important to know whether a baby bottle risks containing microplastics and that they believe companies should disclose the presence of microplastics in their products. *See* R. 22 ¶¶ 92–94. But these surveys do not render plausible Felsenthal's claim that the Baby Bottle's labeling is deceptive. As explained, the Baby Bottles are made of plastic,

9

and it would be unreasonable for a consumer to expect plastic products to contain no microplastics. Thus, "[n]o reasonable consumer would expect a disclosure about the presence of microplastic particles," *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 885 (N.D. Ill. 2024), especially when Felsenthal has not plausibly alleged that microplastics are harmful and her allegations suggest that polypropylene is known to release microplastics.

Moreover, the Court is unpersuaded by Felsenthal's reliance on *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), to suggest that dismissal would be inappropriate. In *Bell*, the Seventh Circuit reversed a district court's dismissal of a complaint alleging that the label "100% Grated Parmesan Cheese" was deceptive because it contained other ingredients. 982 F.3d at 473. The Court found that a reasonable consumer could read the label to mean "100% grated," "100% parmesan," or 100% cheese that is parmesan and grated. *Id.* at 476–77. Here, by contrast, Felsenthal has failed to adequately allege that reasonable consumers of the Baby Bottles would read the "Made Without BPA" and "Dishwasher and Microwave Safe" representations to mean that these plastics products contain no microplastics, or even that they do not contain harmful levels of microplastics when heated.

   2.  Intent

Medela further argues that Felsenthal has not adequately pleaded that Medela intended to mislead consumers. For claims premised on misleading representations, "the ICFA 'eliminated the requirement of scienter,' so that 'innocent misrepresentations are actionable as statutory fraud.'" *Kahn*, 107 F.4th at 603

10

(quoting *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1039 (1992)). To survive a motion to dismiss a misleading representation claim, a plaintiff need only allege that defendant intended the plaintiff to rely on the representation, not that defendant intended to deceive plaintiff. *Id.*; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). However, to state an ICFA claim based on an omission, the complaint also needs to allege that the defendant knew about the defect and omitted or concealed it knowing the truth. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739–40 (7th Cir. 2017); *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 509 (2005) ("Where a plaintiff claims consumer fraud on the premise that the defendant concealed or omitted material facts regarding products from potential buyers with the intent that buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of concealment."). Such knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *see also Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842 (N.D. Ill. 2024).

Here, Felsenthal alleges that Medela intended consumers to rely on its representations that the Baby Bottles were "Made Without BPA" and "Dishwasher and Microwave Safe" when deciding to make their purchase. *See, e.g.*, R. 22 ¶¶ 64, 77. Normally, this is enough to plead the intent requirement of a misleading representation. But, as just explained, Felsenthal has not plausibly alleged that the representations are indeed misleading.

Additionally, as for the ICFA omission claim, Felsenthal's complaint falls short of plausibly alleging intent. Felsenthal alleges that the Baby Bottles are made with

11

polypropylene, *id.* ¶ 32; there are studies showing polypropylene releases microplastics when heated, *id.* ¶¶ 23–37; and that Medela is a "large, sophisticated worldwide company" that "knew or should have known that the [Baby Bottles] contained harmful plastics," *id.* ¶ 72. However, these allegations do not allow the Court to reasonably infer that Medela knew about these studies, that polypropylene releases microplastics at harmful levels, or even that microplastics are harmful at all. *Cf. Donamaria v. Reproductive Genetic Innovations, Inc.*, No. 24 C 9535, 2026 WL 381644, at *7 (N.D. Ill. Feb. 11, 2026) (finding plaintiff had adequately plead intent where she alleges the defendant was aware of and had reviewed the scientific literature and research concerning PGT-A). Therefore, Felsenthal has not plausibly alleged intent under the ICFA.

### 3. Actual Damages

Next, Medela contends that Felsenthal has not alleged actual damages. To plead actual damages, a plaintiff must allege "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). "[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628 (2008)). Thus, a plaintiff who "actually bought the product" can plead actual damages by "simply alleg[ing] that she suffered actual pecuniary loss because she allegedly paid more than the product was worth." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 856 (N.D. Ill. 2021); *see also Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D. Ill. 2022) ("Numerous courts have permitted

12

ICFA claims to proceed where . . . a plaintiff claimed that . . . she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth.").

Here, Felsenthal paid what she bargained for: a solid plastic baby bottle that releases microplastics over time and when exposed to heat. R. 22 ¶ 23. True, Felsenthal alleges that she relied on Medela's representations and that reasonable consumers would have paid less or would not have purchased Medela's products if they knew microplastics leached into the baby bottles at higher levels when heated. *See id.* ¶¶ 70–71, 83. But Felsenthal provides no factual allegations that there exists cheaper plastic baby bottles without microplastics or that the Baby Bottles have a diminished value because of the microplastics. *See Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008). It would no doubt be difficult to make those allegations considering microplastics are nearly impossible to avoid. *See Slowinski*, 744 F. Supp. 3d at 887 ("[O]ne wonders how Plaintiffs could have purchased [plastic] water bottles without microplastics at a lower price."). Accordingly, Felsenthal has not plausibly alleged any actual economic damage. For all these reasons, Medela's motion to dismiss Count II is granted.

### C.    Unjust Enrichment

An unjust enrichment claim is "tied to the fate of the claim under the ICFA." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (cleaned up). Because Felsenthal has failed to state an ICFA claim, she also does not state an unjust enrichment claim. Medela's motion to dismiss Count III is granted.

**D.     Class Action**

Last, Medela argues that Felsenthal's class action count should be dismissed because (1) she does not plead a violation of the ICFA; and (2) individual questions of fact predominate because the proposed class includes people injured under consumer fraud laws of other states and it includes individuals who are not harmed by paying a price premium. Where a court determines that a plaintiff has not adequately pleaded the substantive underlying claim, she cannot represent the putative class. *See Chavez v. Ill. State Police*, 251 F.3d 612, 630 (7th Cir. 2001); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) ("[B]ecause Halperin has not adequately pleaded a consumer fraud claim under Illinois law . . . he cannot represent either an Illinois class under the ICFA or a multi-state class under the other nine States' consumer fraud laws."). Because Felsenthal has not plausibly alleged a violation of the ICFA, the Court need not address Medela's alternative arguments to strike the class allegations. Medela's motion to dismiss Count I is granted.

## Conclusion

For the foregoing reasons, Medela's motion to dismiss is granted in part and denied in part. Felsenthal may file a second amended complaint by April 20, 2026 if she believes she can remedy the deficiencies identified herein.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: March 30, 2026